THOMAS F. HUESTON, PROSECUTOR, v. EDWARD S. ATWATER ET AL., RESPONDENTS.

Argued July 15, 1922—Decided July 19, 1922.

An act of the legislature passed March 6th, 1922 (*Pamph. L., p.* 90), entitled "An act authorizing mayors of certain cities to appoint commissions to change the lines and boundaries of wards and election districts and to increase or decrease the numbers thereof," which excludes from its operation all cities governed by the "Walsh act," creates a classification of cities which is illusory, and not justified by the constitution of the state, and is therefore void as an unconstitutional statute, and proceedings to alter the boundaries of wards under its provisions, having no other support, will be set aside.

On *certiorari.*

Before a single justice of the Supreme Court, by consent of both parties.

For the prosecutor, *Edward A. McGrath* and *James C. Connolly.*

For the respondents, *John K. English* and *Clark McK. Whittemore.*

The opinion of the court was delivered by

BERGEN, J. As authorized by a statute passed March 6th, 1922 (*Pamph. L., p.* 90), entitled "An act authorizing mayors of certain cities to appoint commissions to change the lines and boundaries of wards and election districts and to increase or decrease the number thereof." the mayor of the city of Elizabeth appointed a commission to carry out the purpose of this act, and that commission made and filed with the clerk of the city a report increasing the number of wards, changing ward lines, and dividing the ward into election districts, with a map annexed showing the boundary lines. A writ of *certiorari* was allowed to review this proceeding which, by consent of both parties, was argued before me sitting for the Supreme Court. The statute referred to provides, that in every city having a population of not less than seventy-five thousand, nor more than one hundred thousand, according to the last census, the mayor shall appoint three commissioners to fix and define the boundaries of the wards of the city, and shall appoint a like commission for the same purpose at the expiration of every ten years, and that the same course shall be pursued in every city thereafter coming within the described class, and that such commission shall within sixty days report to the mayor of the city the boundary line and wards as changed, and file the report with the city clerk; that the report shall describe the ward lines with an approximate statement of the population of each ward, and the number of voters therein; that a map be filed with the report showing the extent of boundaries of the wards, which shall be formed by contiguous territory; that ten days after the filing of the report the line and boundaries of the wards shall be as set forth therein, and all

other and former ward lines and boundaries shall thereupon be abolished, and the wards thus designated shall be and continue the wards of the city, and thereafter no change in the number of wards or the lines and boundaries thereof in any such city shall be made oftener than once in ten years; that all officers of existing wards shall continue in office until their terms expire, and they shall represent the new wards in which they reside after the change; that when a city is so divided it shall be the duty of the commissioners to divide the ward into election districts. The statute also provided that the provisions of the act should not apply to any city which is now, or shall hereafter be, governed under the provisions of an act entitled "An act relating to, regulating, and providing for the government of cities, towns, boroughs and other municipalities within the state" (*Pamph. L.* 1911, *p.* 462), commonly referred to as the "Walsh act." The powers delegated to the mayor and the commission are legislative in their nature and become effective in any city to which the act applies ten days after the filing of the report and map.

The first reason urged by the prosecutor in support of his writ is that the act of 1922, above referred to, upon which the assailed proceedings rest, is unconstitutional because it exempts from its provisions all cities governed by the "Walsh act," and that as the entire class of cities, having the required population are not included within the act, it is special and not general legislation, and therefore prohibited by the constitution of the state. This contention is sound, the classification being illusory, unless there is some reason, good in law, for the distinction made between cities, having the required population based on the number and method of selection of governmental officers to exercise in each city precisely the same powers.

On the argument the defendants urged that the excepted municipalities are not governed by a common council, nor are councilmen to be elected by wards in them, and therefore in such municipalities changes in ward lines are not necessary, and therefore the legislature properly eliminated

them from the purview of the act. There is no legal force in such an argument. The "Walsh act" does not abolish wards in municipalities governed by it, nor transfer to the governing body any governmental powers not enjoyed by all other cities. The act declaring the powers to be such as are not in conflict with the laws applicable to all cities of the state, or with the provisions of the constitution of the state. Thus cities of the designated population are all governed and controlled by general laws applicable to all cities, and the "Walsh act" does not create a class of cities to be separately dealt with because of the powers granted. As was said by Mr. Justice Trenchard in *Delaware River Transportation Co.* v. *Trenton,* 86 *N. J. L.* 48; *affirmed, Id.* 679, construing the "Walsh act:" "It is difficult to see how a statute which deals with a power common to all cities, both those which did and those which did not accept the 'Walsh act,' can now be dealt with solely with respect to those which did adopt it, or in the respect to those which declined to adopt it." It is not claimed by defendants that all wards in the excluded cities have been abolished, nor that justices of the peace are not to be elected in wards, under article 7, section 2, paragraph 8, of the constitution, which provides, *inter alia,* that justices of the peace shall be elected by the voters of wards in cities voting by wards, or that there are not numerous other officers elected for, and by wards, under the statutes of the state. The right to continue to elect such officers by wards was not destroyed by the "Walsh act," and it is not apparent why the classification of cities having wards, and mayors to appoint such commissions, within a designated population, should be based on the method of selection of the persons administering the government of the city, when the powers granted are the same, and their exercise are made subject to all laws applicable to all cities. There is no perceptible reason why the ward lines in cities adopting the "Walsh act" might not require change and alteration of ward lines as well as a city of the same size which had not adopted that form of government. I am of the opinion that the clas-

sification provided for in the act under discussion is arbitrary and illusory and therefore it violates the constitution of the state and for that reason all proceedings, including the appointment of the commissioners, should be set aside.

The report is also defective in that it establishes election districts. The legislature by an act approved March 14th, 1922, eight days after the act under consideration was passed, amended the election law (*Pamph. L., p.* 425) by providing that if any change in an election district became necessary because of a change of ward lines, the county board of election might revise or readjust the election districts. Thus it appears that the latter act vested the county board of election with the power to readjust election districts where that became necessary because of a change in the ward lines.

The order appointing the commissioners and their report will be set aside.